UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JOSE NAVARRO SALAS,
Petitioner,
v.
WARDEN, FACILITY ADMINISTRATO, et al.,
Respondents.

Case No. 5:26-cv-03260-SRM-ACCV

**ORDER GRANTING PRELIMINARY INJUNCTION MOTION [1]**

**A# 204-258-625**

On June 12, 2026, Petitioner Jose Navarro Salas ("Petitioner"), at the time *pro se*, filed a combined Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Petition") and an *Ex Parte* Application for Temporary Restraining Order and Order to Show Cause ("Application"). Dkt. 1. Petitioner requested that the Court order Respondents to release him from their custody immediately. *See* Dkt. 1 at 2. A Deputy Federal Public Defender entered an appearance on July 17, 2026, and requested an extension to file a reply on July 22, 2026. Dkt. 14, 16. The Court granted that request allowing Petitioner to file a response by July 27, 2028. Dkt. 17. Respondents filed an Answer on July 27, 2028. Dkt. 19. Because the standards for granting a TRO and a preliminary injunction are the same, the Court converts Petitioner's TRO to a motion for a preliminary injunction ("PI Motion"). *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n. 7 (9th Cir.

2001). Having reviewed and considered all the briefing filed with respect to Petitioner's PI Motion, the Court finds that oral argument is not necessary to resolve the PI Motion, *see* Fed. R. Civ. P. 78; Local Rule 7-15; *Willis v. Pac. Mar. Ass'n*, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.

## I. BACKGROUND

Petitioner Jose Navarro Salas is currently in immigration custody at the Desert Annex facility in Adelanto, California. Dkt. 18 at 2. Although born in Mexico, he has lived in the United States for nearly 30-years, since 1998. *Id.* Mr. Navarro Salas moved to the United States when he was approximately seven years old. *Id.* He was a DACA recipient through 2019. *Id.* He attended high school and college in San Bernardino County. *Id.* He worked as a pipelayer foreman through the City of Burbank. *Id.* Petitioner is married to a United States Citizen who has filed an I-130 application (foreign relative application) to petition for legal status for Petitioner. *Id.* at 3.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 65(b) governs preliminary injunctions and temporary restraining orders ("TRO"). *See* Fed. R. Civ. P. 65(a), (b). The standards for a TRO and a preliminary injunction are the same. *See Stuhlbarg Int'l Sales Co.*, 240 F.3d at 839 n. 7; *NML Capital, Ltd. v. Spaceport Sys. Int'l, L.P.*, 788 F.Supp.2d 1111, 1117 (C.D. Cal. 2011) (same). A TRO is an extraordinary remedy meant to preserve the *status quo* and to prevent irreparable harm until a hearing on the merits can occur and no longer. *See Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974). Similarly, the purpose of a preliminary injunction "is to preserve the status quo and the rights of the parties until a final judgment" on the merits can be issued. *See U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010).

The seminal case *Winter v. Nat. Res. Def. Council, Inc.* explains the factors courts evaluate to determine whether the extraordinary remedy of a preliminary injunction or TRO is warranted. 555 U.S. 7 (2008). To obtain a preliminary injunction, the movant must

establish "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. The final two *Winter* factors merge when a TRO is sought against the government, as is the case here. *See Nken v. Holder*, 556 U.S. 418, 435 (2009).

## III. DISCUSSION

Petitioner challenges his detention as unlawful because it violates his liberty interest since he was not given notice or a pre-deprivation hearing. *See* Dkt. 1, 18.

### A. Likelihood of Success on the Merits

To warrant preliminary relief, Petitioner must show a likelihood of success on the merits of at least one of his claims. *See Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 546, n. 12 (1987).

#### 1. Violation of the Petitioner's Fifth Amendment Due Process Rights

Petitioner has demonstrated a substantial likelihood of success on his claim that his arrest and continued detention violate the Fifth Amendment Due Process Clause.

The Due Process clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V. Due process rights extend to noncitizens present in the United States. *See Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("'It is well established that the Fifth Amendment entitles [noncitizens] to due process of law' in the context of removal proceedings.") (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). The Supreme Court has established beyond a shadow of a doubt that "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Procedural due process requires that a person be afforded notice and opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Generally, notice and pre-deprivation process are required to satisfy the mandate of the Fifth Amendment Due Process Clause. The Court in *Mathews* created a three-factor test to assess whether due process requires further protections. *See id.* at 335. Courts must weigh: "[f]irst, the private interest that will be

affected by official action; second, the risk of erroneous deprivation of such interest through procedures used and the probable value, if any, of additional or substitute safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Id.*

**a) Liberty Interest**

Petitioner's thirty years residence in the state of California, his Deferred Action for Childhood Arrivals ("DACA") status for three grants of DACA, and his extensive connections in southern California establish that he has a liberty interest recognized and protected under the Fifth Amendment Due Process Clause. *See e.g., Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) ("The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty."); *Garcia v. Andrews*, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty."); *Cruz v. Lyons*, Case No. 5:25-cv-02879-MCS-MBK, 2025 WL 4051129, at *3 (C.D. Cal, Nov. 6, 2025) (granting application for temporary restraining order and finding petitioner had a protectable liberty interest in remaining on conditional immigration release.); *C.A.R.V. v. Wofford*, Case No. 1:25-CV-01395 JLT SKO, 2025 WL 3059549, at *10 (E.D. Cal. Nov. 1, 2025) (finding petitioner had a constitutionally protected liberty interest in remaining released from ICE custody based on the "approximately four years on parole" preceding his re-detention.). While DACA is not parole, after thirty years of life in the United States, Petitioner has a substantial liberty interest protected by the Fifth Amendment Due Process Clause.

Petitioner has a substantial private interest in his physical liberty and remaining out of immigration detention. Petitioner was brought to the United States as a child. Deferred action constituted both a recognition that Petitioner was allowed to be present in this country and that he was allowed to seek an employment authorization document ("EAD").

The fact that United States Citizenship and Immigration Services ("USCIS") recognized that Petitioner was in the United States and decided not to detain him but instead granted him deferred action such that his removal proceedings would be deferred shows that USCIS recognized that he had a liberty interest. *Singh v. Hale*, No. 2:26-CV-53, 2026 WL 765623, at *4 (D. Vt. Mar. 18, 2026) (Recognizing a strong liberty interest where the petitioner was actively engaged with the immigration process, applying for and receiving DACA relief for over a decade; worked; and married a United States citizen.); *Cf. Torres v. Hermosillo*, No. 2:26-CV-00076-TLF, 2026 WL 547591, at *5 (W.D. Wash. Feb. 23, 2026) (recognizing a liberty interest where petitioner had deferred action from Special Immigrant Juvenile Status). Petitioner has affirmatively sought legal status through the respective legal process and availed himself of the protections of the laws of the United States. *See Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) ("[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions.").

**b) Risk of Erroneous Deprivation**

Moreover, the risk of erroneous deprivation of Petitioner's liberty interest is high because Petitioner was afforded no process. Here, Respondents failed to provide Petitioner with notice or a meaningful opportunity to be heard before depriving him of his liberty. Dkt. 18.

**c) Government Interest**

Under *Mathews*, this Court must consider the government's important and serious interest in ensuring that the immigration laws are enforced, public safety ensured and the costs that the government would bear if the Court requires additional safeguards and process. Balanced against the strong interests in Petitioner's liberty interest, however, and the lack of an opportunity for any process before detaining Petitioner, as well as his continued detention, the Court determines that Petitioner has demonstrated a substantial

likelihood for success on his claim that his arrest and continued detention violate the Due Process Clause of the Fifth Amendment.

**2. Irreparable Harm**

Petitioner is suffering irreparable harm because Petitioner is likely being detained in violation of his constitutional rights. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). Furthermore, as the Ninth Circuit has explained, "immigration detention" results in "subpar medical and psychiatric care . . . , [] economic burdens . . . on detainees and their families . . . , and [] collateral harms to children of detainees." *Hernandez*, 872 F.3d at 995. Therefore, the Court concludes that Petitioner will suffer irreparable harm if this PI Motion is not granted.

**3. Balance of Equities and Public Interest**

Where the government is the opposing party, the balancing of the equities and the public interest merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). Thus, the Court asks whether any significant "public consequences" would result from issuing the preliminary injunction. *See Winter*, 555 U.S. at 24.

As other courts have recognized, "the public has a strong interest in upholding procedural protections against unlawful detention." *Vargas v. Jennings*, No. 20-CV-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020). And the government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *See Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). In the absence of an injunction, Petitioner will continue to experience punitive unlawful detention and the resulting emotional and economic harm.

**IV. CONCLUSION**

For the above reasons, that the Court concludes as follows:

1. Petitioner's PI Motion, Dkt. 1, is **GRANTED**.

2. Respondents shall immediately release Petitioner and shall not impose any release restrictions (e.g., electronic monitoring through GPS ankle bracelet) on Petitioner unless deemed necessary at a future pre-deprivation bond hearing.

3. Respondents shall file with the court a Notice of Compliance within three calendar days following the filing date of this Order confirming that Petitioner has been released and that no additional release restrictions have been imposed.

4. Respondents shall not re-detain Petitioner during the pendency of these proceedings without providing petitioner with, at minimum, an individualized notice describing the change in circumstances necessitating his arrest and/or detention, and a pre-deprivation bond hearing before an immigration judge. Petitioner shall not be detained unless Respondents demonstrate, by clear and convincing evidence, at the pre-deprivation hearing that Petitioner is a flight risk or a danger to the community, and that there are no combination of conditions that will reasonably assure his appearance and/or the safety of the community. If Petitioner is again placed into detention in this District following proceedings in this case, Respondents shall not transfer or remove Petitioner from this District unless executing a final order of removal issued against Petitioner.

5. The parties shall meet and confer no later than August 21, 2026, to discuss what, if anything, remains to be done with respect to the Petition. Dkt. 1. Should the parties agree that there is nothing further for the Court to decide, they shall file a stipulation and proposed order to dismiss the case or grant the Petition and enter judgment. If the parties disagree, then the parties shall file a joint status report which shall answer the following: (1) what issues remain for decision; (2) with respect to each issue, whether both parties intend to stand on briefing already filed, and if so, noting the specific citations the Court

should consider; (3) if either party believes further briefing is necessary, proposing a schedule for such briefing; and (4) whether the parties agree to consent to the assigned Magistrate Judge for all purposes. If mootness is one of the issues that remain for decision, the parties shall address the issue in the joint status report. The parties' joint status report or stipulation shall be filed no later than August 25, 2026. If the parties fail to file a stipulation or a joint status report by the deadline, the Court will consider it as a concession that no further relief is available and that the action may be dismissed without prejudice.

**IT IS SO ORDERED.**

Dated: August 14, 2026



HON. SERENA R. MURILLO
UNITED STATES DISTRICT JUDGE